May it please the Court, my name is Bennett Cooper and I'm representing Appellant C.E. Distribution. This case arises out of conduct that was tortious and aimed at an Arizona plaintiff in order to injure that plaintiff. And that also arose out of a breach of a distribution agreement between the parties that the defendant knowingly entered with an Arizona company, knowing that performance would be from Arizona. The district court erroneously denied dismissal of the action for lack of personal jurisdiction in a manner contrary to the existing precedent of this court and contrary to the court's reaffirmation of that precedent in the case that we have submitted as a supplemental citation, Harris-Rutzke, which was decided approximately a month ago by this court. Did Harris-Rutzke, in your view, address both the torts prong of personal jurisdiction and the contracts prong? No, Your Honor. It addressed specifically the tort prong. It dealt with claims for tortious interference with contract and tortious interference with prospective economic event. I thought you were referring to both when you said that it was reaffirmed in recent case authority. But you're specifically limiting that statement to the – That's correct. Okay. That's correct. But we think that the existing authority on contract claims warranted denial of the motion below. This Court, of course, reviews the district court's decision de novo. And since the district court did not hold an evidentiary hearing, as it did not hold one in the Rutzke case, the plaintiffs' allegations and their affidavits control as to any contested facts. Let me address first the tort claim, because I think that is rather simple under the test that this Court recognized in Bancroft and Masters and also reaffirmed in Harris-Rutzke. And that is to have jurisdiction under the – and we're talking now about specific jurisdiction – under the – for a tort claim, all one needs to show is three things. An intentional act. Harris-Rutzke recognizes the intentional interference with contract or economic advantage satisfies this. Expressly aimed at a forearm state with the brunt of forearms suffered and where the defendant knows it's likely to be suffered in the forearm state. Now, this Court made clear in Bancroft and Masters and reaffirmed in Harris-Rutzke what has always been the case, which is that the conduct does not have to constitute something directly aimed into. That is, it does not require that mail, tortious mail or tortious publications, be sent into the jurisdiction. In Bancroft, for example, the tortious act was committed by letter, but the letter was not sent into the California forum. It was mailed into Virginia. The jurisdiction was based on the fact that the letter sent to Virginia was intended to cause harm to the plaintiff in California. Well, that's the problem Judge Martone had with the case. I guess he found there was not – he hadn't made a showing of, what, individual targeting. Yes, and that, Your Honor, I found somewhat inexplicable. Paragraph 15 of the complaint says, threatening – it alleges threatening actions directed toward injuring the commercial viability of CE. This was not something where – a situation where the defendant didn't know that the person it was harming was in Arizona. These parties were no strangers, were part of a distribution agreement. It was negotiated with the Arizona company. CE's only place of business is in Arizona. The product was ordered from here. It was shipped – ordered from Arizona. It was shipped from Arizona. Payments were remitted back to Arizona. The negotiations of the agreement took place with the plaintiff's principal in Arizona. They knew, because of their competitive relationship, their distribution agreement, and the fact that the – kind of the precipitating act, which was the plaintiff's hiring of one of the defendant's employees, which angered management as alleged in the complaint, that this was an Arizona company. In retaliation, they went after the Arizona company to hurt them, and that's alleged in the complaint. With all respect, the district court's statement that there's no allegation of targeting is contrary to at least three express statements in the complaint in paragraphs 15, 24, and 59. There was certainly targeting here, and it's clear under both Bancroft and Masters and Harris-Rutsky that where you have a corporation that's both incorporated in the state and then it has its principal place of business here – in this case, its only place of business – that the brunt of harm would be suffered here. And the defendant, in this case, knew quite well that that would happen. But it's clear that, from Harris-Rutsky, that the conduct doesn't have to directly touch the foreign state at all. In Harris-Rutsky, you had a California insurer, and it had a contract with a London insurer with a London intermediary broker. The broker decided to break up the arrangement. It dealt in London with the insurer, causing tortious interference with that contract. And even though all the conduct took place in London between the London-based entities, this Court found jurisdiction over the tortious interference claim because it was aimed at harming the plaintiff in California. The same is true here. Let me turn now to the contract claim. This is not a case where the defendant bought some product from a catalog and it just happened to be a random purchase from a company that they didn't care where it was. This arose out of a distribution agreement that persisted for nearly two years. It was negotiated between the two principals of the company, Ms. Craven or Mr. Matthews. This was a distribution arrangement that Newsense knew it had to enter into because it had lost the competition for exclusive importation rights, and therefore it had to deal with CE. It entered into an agreement. It made 13 purchases on nearly a monthly basis until the contract was terminated because of the conduct. What case authority are you relying upon to support personal jurisdiction for the breach of contract action? Frankly, I think the clearest case is Burger King, the Supreme Court case, where you had a Michigan entities that were entered into an agreement with a Florida company, Burger King, to open a store and distribute Burger King products in. But what did that involve, a continuing relationship? What was the nature of the contract in this case? Well, this was a distribution arrangement. That is, my client was the exclusive importer, and this was a company that wanted to further distribute this product in the United States. Burger King involved a franchise agreement that was for a long-term relationship. Would you characterize the relationship of the parties in this case in the same way? Yes, I would, Your Honor. This was a distribution arrangement. Our client was advertising them in national advertising to this distinct market for guitar speakers as one of their authorized distributors. Was there a written agreement? There was not, Your Honor. But the court in Burger King did not require a written agreement, nor is one written. That is, there are a lot of long-term arrangements that are dealt with orally. In this case, in fact, the parties, and Mr. Matthews agrees with that, but the price terms for all the subsequent purchases and the terms on which the purchases would be made were negotiated up front. These were not someone going into a catalog, making a purchase now, sometimes later making another purchase. This was intended to be a long-term arrangement such that the authorized distributor relationship was being advertised to the public. That's not a transient purchase. The contract claim does not come in front of us as a freestanding claim. That's not the only claim in the contract. No, Your Honor. Let's assume for the moment that we find that there's personal jurisdiction over the tort claim. Does it make a difference to our analysis of the contract claim that we will be exerting personal jurisdiction over this defendant in Arizona over a related claim? I think it... In court, and now we're talking contracts. Does it make a difference, in other words, that the contract claim is not freestanding? I think it does, Your Honor. The test that this Court recognized in Dole is whether the claim is one which arises out of or relates to the defendant's foreign-related activities. I think the fact is that the tortious conduct and the breach of contract, the conduct is the same. They are related. And therefore, it relates to, the contract claim relates to, the foreign-related tort. That is, they are inseparable. The fact that they are two different causes of action, they arise out of precisely the same conduct. So you're relying upon Dole to establish personal jurisdiction for the contract claim? Is that your argument? Yes. I think that they are all wrapped in. They're really inseparable in this situation because it's the same conduct and it's tortious interference with contract and breach of contract. But isn't it true that the Ninth Circuit has articulated separate tests for jurisdiction for contract claims versus tort claims? I would say that it's really one test, Your Honor. And the purposeful availment, the first prong of that test can be met in a variety of ways. That is, it can be met in the tort context by the effects test without more. In this case you can't. How is it met for contract claims in this circuit? It can be met where one purposefully directs its activities to the forum or where it consummates some transaction with a forum or resident thereof or where it performs some act by which it purposefully avails itself of the privilege of conducting business. And what case are you relying upon for that test? That's the, that's Harris-Rutzke, that's Dole. Oh, Harris-Rutzke, I thought we agreed was in the torts. But the general test that is for personal jurisdiction, that three alternatives, it's been the longstanding test in cyber cell. Regardless, that's not tort-specific. What's tort-specific is the Calder effects test, which is one way of satisfying that first prong of purposeful availment. How about invalid versus savage? We said that for contract claims that the purposeful availment requirement is satisfied if the defendant has taken deliberate action within the forum state or has created continuing obligations to forum residents. Is it your view that that test set forth invalid has been satisfied? Yes, because I think there was. In fact, we had a distribution agreement with New Censor that intended to Is that within the state, deliberate action within the state? Well, that's in the alternative, Your Honor. That is, it's deliberate actions within the state or continuing obligations. Well, the claim here is breach of the implied covenant of good faith and fair dealing, which under Arizona law means that you shall take no action which will undermine the ability of a of the other party to reap the benefits of the contract. That's a continuing obligation. That was not a one-time, like failing to pay on one particular shipment. That was a continuing obligation as part of an advertised authorized distributorship. What's your best case authority for your definition of continuing obligation? We have not briefed a case that dealt with that particular fact, but, Your Honor, I would say that in this case, the continuing obligation was part of the distribution agreement that was advertised to the public. That is a continuing arrangement that the public is intended to rely upon, not simply for the month in which the publication comes out, but whenever they want a water product. And I don't think that the plaintiff, that the defendant or senator has cited any contrary authority rejecting that. This is not a case of a mere contract. Thank you very much, Mr. Cooper. Thank you. Good morning. Good morning, Your Honors. Jeffrey Messing, representing Defendant Appellee, New Sensor Corporation. Let's talk first about the Calder effects test, which I think is the central aspect of plaintiff's argument in this case. They rely on the Seventh Circuit decision in Janmark, Dole v. Watts, and the most recent case, the Harris case. I think the problem is that they fail to recognize that there is a qualitative difference between the facts of those cases and the facts that we have here. And the distinction is a case in which the defendant is accused of entering into a contract with a third party that causes economic damage to the plaintiff. That's what we have here. And what was involved in those cases, which is where the defendant is accused of actually inducing a breach of the defendant's – excuse me, of the plaintiff's contract. In those cases – That's not Dole. That's my point, Your Honor. The point about Dole is that in Dole, the European defendants were accused of defrauding the Dole in California. The fraudulent misrepresentations were directed towards California. And the Court emphasized in that case that the forum where a corporation has its principal place of business will not always have jurisdiction. Under the plaintiff's analysis of those cases, that statement would no longer be true. Under the plaintiff's analysis of the Calder effects test, if I allege that I'm a corporation with my principal place of business in the forum, and you, the defendant, intentionally – committed an intentional tort against me, then under their test, you've satisfied the Calder effects test. Let me read to you from the Harris case, Harris-Wetzky. But it's a quotation from Dole. And I'm on – I'm on page 1131. This is a quotation from Watts, 303, F3, 1104, Jump Site, 1114. When a forum in which a plaintiff corporation has its principal place of business is in the same forum toward which defendants expressly aim their acts, the effects test permits that forum to exercise personal jurisdiction. There's no dispute as to the first piece of that, that is to say a plaintiff corporation has its principal place of business in Arizona. Agreed. And I don't think there's a serious dispute really as to where your client knew the effect of its conduct would be felt. And in that sense, it was aimed. There may be a dispute as to how much conduct there was or how much harm there was. I think the – But that it was aimed at that corporation who had its principal place of business in Arizona I think is beyond dispute. I think dispute, Your Honor, is over whether knowing that economic effects will be felt in the forum at the principal place of business is enough to satisfy the aiming requirement of the effects test as enunciated in Ninth Circuit. What else would be necessary? It is some action directed towards the forum. Such as? Such as in Dole, the fraudulent misrepresentations were made to the forum. Such as in Brainard, the defamation was made to the recipients in the forum. Why isn't the relationship between CE and News Censor sufficient? They had contractual relations over a period of years with things being shipped from Arizona to New York. I think the problem there, Your Honor, is that it confuses two different concepts. The contractual relationship is not the basis for the tort claims. The basis for the tort claim is the fact that News Censor entered into a contract with a third party, which allegedly caused economic detriment to the plaintiff in the forum. There is no allegation that by entering into that contract that they disrupted the actual contract, that it caused a breach of the contract. Where would you say that the effects would be felt if not Arizona? I think that there are several cases that point out a corporation does not truly feel harm in the principal place of business the same way a person does. When you're talking about a corporation and lost sales, you're really talking about the location where those sales were lost. Otherwise, you're really collapsing the test down to one because a corporation will always in that sense feel harm in the principal place of business. And if that were the test, then the test would simply be, if you allege an intentional tort against a corporation, you are always subject to jurisdiction in the corporation's principal place of business. Now, that may be right, and I'm sympathetic to that argument at the outer boundary, but this is not a case where your client had no dealings with the plaintiff in Arizona, had quite a few dealings with the plaintiff in Arizona. Your Honor, it had some dealings with the plaintiff in Arizona, but the claims in this case do not arise out of those dealings. Well, that's a way of saying it, but another way of saying it is they do arise. That is to say, they're clearly related. Arise may be a tricky word, but they're clearly related. I mean, this is an ongoing business relationship that went bad. Well, Your Honor, it's an ongoing business relationship only when you look at the affidavits, only in the sense that there were a series of purchases and sales. That's all it was. When you look at the affidavits. Well, it was purchases and sales, but, in fact, your client was a distributor in New York of this product. If the business goes bad, they decide, at least according to the allegations in the complaint, your client decides they're going to undercut wrongfully the Arizona Corporation. Now, whether the allegations are true as to the wrongfulness, I have no idea, but that's the essential case. That's the allegation, Your Honor, but when you look at the affidavits, there's no distribution agreement. This is not Burger King. This is an agreement where they agree to sell me goods, and then I can resell them. There is no allegation that there was any control over the distribution. The only advertising of my client as a distributor was the plaintiff's unilateral act. It was not something that defendant ever did. So, really, they're trying to bootstrap themselves from the type of arrangement. And, quite frankly, I have the same type of arrangement with Land's End. Over the past several years, I've made 50, 60 purchases. I have telephone calls, faxes. They've sent me goods. And you resell the stuff you get from Land's End? I don't. But I could, Your Honor. I recommend it. Well, I mean, if I did resell it, but here's the point of their argument. If I was reselling the goods, and if I knew that they had an exclusive distribution agreement with Acme, and I found out that I could buy Acme polo shirts cheaper from a third party and started doing so, then, according to the plaintiff's argument, I'm subject to personal jurisdiction in Wisconsin. Well, you better watch out, then. Listen, I've got a different question, and that is, it's the question on the contract claim. And I addressed your adversary on this, asking whether it made a difference that the contract claim is not freestanding. I'll ask it to you, but in a slightly different form. Assuming, and I understand this is really an assumption, assuming we find jurisdiction, personal jurisdiction, over the tort claim, why isn't there pendant personal jurisdiction over the contract claim, which arises roughly out of the same set of facts? Are you familiar with the concept? I am familiar with the concept of pendant jurisdiction. Pendant personal jurisdiction, not pendant subject matter jurisdiction. Your Honor, I was under the impression that pendant jurisdiction was limited to subject matter, and I have to admit that I have not researched the issue in the context of this case. We have very infrequently referenced that concept in our circuit law, and it floats around in other circuit law. The idea is that if you have jurisdiction over a particular defendant on a claim, that there's an argument in favor of jurisdiction over related claims on the same complaint, and that you don't need the same degree of showing of contact with respect to that other claim, because it would be so obviously inefficient. If you're litigating against this person on one claim, you've got a single, what otherwise would be a unitary lawsuit, why split it? And pendant personal jurisdiction is a doctrine that allows, at least in some circumstances, to bring in that additional claim. I understand the logic of the argument, Your Honor. Beyond that, I'm not prepared to speak to it. I haven't researched it. If I can flip to the contract argument from all. I think it's also worth noting that on the Calder effects test, there does seem to be a line of cases that are cited somewhat indiscriminately, but I think they stand to their one side. It seems to be clear that individuals subject to defamation are treated somewhat differently than other intentional torts and corporate intentional torts. And I think that helps to explain Calder itself, Brainerd, Gordy, and Carruth, all of which involve defamation of individuals. I think Corvent and Casualty Assurance make it clear, and in Corvent this Court expressly recognized that a corporation like CE does not feel harm in a particular location like an individual. The focus, and it's Corvent that was the case I was referring to earlier, that points out that the focus there is not so much on the principal place of business, where the harm is booked, but where the sales are lost. Flipping to the contract argument, the problem in this case is that they're not really dealing with a distribution agreement with long-term effects the way we were in Burger King. This is a series of isolated purchases and sales. There was no continuing obligation. There was no ties back to the forum. Once the goods were sold, the seller no longer had any control over them. When the seller decided that enough purchases weren't being made, they simply canceled the contract. And that's what the record reflects. Very, very briefly on the cease and desist letters, Your Honor. Your time is about up. In fact, your time is up. If you'd like to finish your thoughts. If you wanted to finish your thoughts, you may. I mean, if you just look at the ARCO case itself and the Scaramaster case, summarize the cases from around the country, the overwhelming authority is that cease and desist letters do not give rise to personal jurisdiction. Thank you very much, Mr. Bessel. Mr. Cooper, you've used up your time. We'll give you a minute to reply. Keep it to a minute. Thank you, Your Honor. I appreciate the grace period. I do want to point out that there are really two contracts that are affected in this case. One of them that is the contract between the distribution agreement between the two parties to this case was an oral agreement. But there was also a written agreement, and that was the exclusive importation distribution agreement between SICA, the Italian exporter, and our client, CE Distribution. And one of the claims is not only that they breached their own agreement with CE Distribution, but also that they tortiously interfered with this written agreement, which they well knew about because they had to operate under it. That was what required them to purchase from CE in the first place. So there was a written agreement in this case. Other than that, unless the Court has further questions. Thank you. Thank you, Mr. Cooper. Mr. Bessel, thank you. The case discharge is submitted.
judges: Silverman, W Fletcher, Rawlinson